IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BARRINGTON M. HAMILTON, a/k/a<br>Jaame Amun Re El,<br><br>   Defendant. | CRIMINAL ACTION NO.<br><br>1:16-cr-0072-AT-JKL-1 |

## **FINAL REPORT AND RECOMMENDATION**

This matter is presently before the Court on Defendant Jaame Amun Re El's motion to suppress evidence [Doc. 119] and on his statements, contained in his motion to suppress, challenging the manner of his arrest [*see* Doc. 151]. For the reasons that follow, the Court **RECOMMENDS** that Defendant El's motion [Doc. 119] be **DENIED**.

**I.   BACKGROUND**

The following factual background about the circumstances of Defendant El's arrest is taken from Defendant's El's motion [Doc. 119] and responsive pleading [Doc. 148]. For additional context, I refer to Special Agent David Rich's testimony about the arrest from Defendant El's bond hearing, [Doc. 79 at

33-56], because Defendant El does not materially dispute that testimony as to the circumstances of his arrest and relies on portions of Special Agent Rich's testimony in his motion. I also take as true the allegations in Defendant El's pleadings for purposes of considering his motion to suppress.

A grand jury returned an indictment charging Defendant El and his codefendant, Curtis Stuart, with one count of conspiracy to commit bank fraud, four counts of bank fraud, five counts of structuring transactions to avoid reporting requirements, and one count of retaliating against a federal officer by making a false claim, [Doc. 1], and on February 16, 2016, a warrant was issued for Defendant El's arrest, [Docs. 6, 21]. On February 24, 2016, at around 9:00 a.m., the arrest warrant was executed at Defendant El's residence at 2788 Plantation Drive, East Point, Georgia, by local officers and federal agents. [Doc. 119 at 1.] The lead agent was Special Agent Rich, a criminal investigator employed at the Treasury Inspector General for Tax Administration. [*Id.*; *see also* Doc. 79 at 33-34.]

At Defendant El's residence, the agents and police announced that they were police with a warrant and demanded entry. [Doc. 119 at 1; *see also* Doc. 79 at 34.] When no one let them in, they breached the front door. [Doc. 119 at 1;

*see also* Doc. 79 at 34.]  The agents, who had their guns drawn, encountered Defendant El in the hallway as he emerged from his bedroom with his hands in the air.  [Doc. 119 at 1; Doc. 148 at 1; *see also* Doc. 79 at 34.]  They placed him in handcuffs and immediately led him to the garage or carport, where they asked him to sit on a chair.  [Doc. 119 at 1; Doc. 148 at 1.]  The agents performed a "protective sweep" of the home.  [Doc. 119 at 1; *see also* Doc. 79 at 34-35.]

Defendant El asserts that the agents "rummaged" through his property, although he does not suggest that they searched through enclosed spaces like a desk drawer or handled any property that was not in plain view.  [*See* Doc. 119 at 1.]  According to the agents, during the protective sweep, they located evidence of bank fraud in plain view in the bedroom.  [Doc. 79 at 35-36; *see also* Doc. 119 at 1.]  Special Agent Rich testified at Defendant El's bond hearing that the agents discovered in plain view purported "identification cards" and tax documents, including an Internal Revenue Service Form 56, which allows a person to appoint a fiduciary to be responsible for his tax return.[1]  [Doc 79 at 35-36.]  Based on his

---

[1] At Defendant El's bond hearing, the government proffered copies of the "identification cards" as exhibits.  [Doc. 27-1.]  The government did not distinguish which items were found in plain view and which were found pursuant to the search warrant.  The government also proffered copies of Form 56 found at Defendant El's home, by which Defendant El declared that other people and

investigation of Defendant El, Special Agent Rich believed that Defendant El was using Form 56 to declare that other people were liable for his tax debt. [*Id.* at 36.]

While seated in the garage, Defendant El "asked to see a copy of the search warrant/warrant" and asked the officers what they were looking for in his house. [Doc. 119 at 1; Doc. 148 at 1-2.]  The officers did not produce a warrant for him to inspect at that time. [Doc. 148 at 2.]  "Soon after" police and agents entered the residence, Special Agent Rich asked him whether the officers could search the residence, and he responded that the residence was private. [Doc. 119 at 1; Doc. 148 at 2.]  Defendant El also asked to have his handcuffs removed so that he could contact a lawyer. [Doc. 119 at 1; Doc. 148 at 2.]  He noticed documents being removed from his house. [Doc. 119 at 1; Doc. 148 at 2.]  An officer placed him in a police cruiser and took him to jail. [Doc. 119 at 1; Doc. 148 at 2.]  Later that afternoon, at 4:45 p.m., a search warrant was issued authorizing agents to search the Plantation Drive residence. [Doc. 78-1; Doc. 119 at 2.]  The agents executed the warrant that same day. [Doc. 79 at 37; Doc. 148 at 2.]

---

entities were responsible for his tax returns for decades. [Doc. 27-3.]  Again, it is not clear which copy of the form was found in plain view.

## II.   DEFENDANT EL'S MOTION

In his motion, Defendant El argues that the evidence discovered at his home at the time of his arrest must be suppressed at trial because the officers who arrested him did not have a search warrant authorizing them to search his home. [Doc. 119.]  He asked several times to see a warrant, but agents did not provide him with copy of the search warrant.  He further notes that the search warrant authorizing a search of his home was not issued until hours after his arrest.  [*Id.*]

Defendant El also argues that the warrant was defective because the search warrant return did not contain a complete inventory of every item seized from his home.  [Doc. 119 at 2; Doc. 148 at 2-3.]  Defendant El alleges that, on March 22, 2016, he received a copy of the search warrant from the government, but the copy that he received did not include a complete inventory of items seized from his home.  [Doc. 119 at 2; Doc. 148 at 2-3.]

Finally, Defendant El asserts that "the warrant was illegally executed." [Doc. 119 at 1.]  This argument appears to be related to his assertion that the agents did not have a search warrant at the time they entered his home.  [*See id.*] He also appears to argue that the agents were required to show him a copy of a warrant.  [*See* Doc. 148 at 2.]

5

The government responds that no evidence should be suppressed because Defendant El was arrested at his residence pursuant to a lawful arrest warrant. [Doc. 141 at 2-3.] The arresting officers and agents performed a routine protective sweep of the residence and, during the protective sweep, noticed documents in plain view that appeared to be evidence of a fraudulent scheme. [*Id.*] The lead agent then applied for and received a search warrant to conduct a search of the home. [*Id.* at 3.] Thus, the officers and agents complied with the Fourth Amendment, and no evidence was subject to suppression. [*Id.*]

Defendant El filed a reply. [Doc. 148.]

### III. DISCUSSION

#### A. A hearing is not required on Defendant El's motion.

The Court has discretion to determine whether a hearing is needed on a motion to suppress. *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985). A hearing is not required on a motion to suppress if the defendant does not allege facts that, if proven, would require the grant of relief. *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000); *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984).

For the reasons discussed below, the facts alleged in Defendant El's motion to suppress and in his responsive pleading, if proven, would not entitle him to relief. Thus, this Court need not have a hearing on his motion to suppress. *See Cooper*, 203 F.3d at 1285.

### B. The agents did not violate the Fourth Amendment by entering Defendant El's residence without a search warrant and seizing contraband found in plain view.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion,'" and, thus, a warrantless search of a home usually violates the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which a suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).

Incident to an arrest, officers may, as a precautionary matter and without probable cause or reasonable suspicion, look in spaces immediately adjoining the place of arrest from which an attack could be immediately launched. *Maryland v. Buie*, 494 U.S. 325, 334 (1990); *United States v. Sunkett*, 95 F. Supp. 2d 1367, 1367-69 (N.D. Ga. 2000). To justify a sweep beyond the spaces immediately adjoining the place of arrest, there must be articulable facts which would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a threat to officer safety. *Buie*, 494 U.S. at 334.

Officers executing an arrest warrant are not required to turn a blind eye to contraband in plain view. *United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). When officers discover contraband in plain view during a lawful protective sweep, they are free to seize that contraband without a warrant. *Id.*; *United States v. Tobin*, 923 F.2d 1506, 1513 (11th Cir. 1991). The "incriminating character" of the item to be seized must be "immediately apparent." *Horton*, 496 U.S. at 136.

The agents and officers did not have a search warrant at the time they entered Defendant El's residence. Rather, they had a warrant for Defendant El's arrest, which gave them the "limited authority" to enter his home to effect the

8

arrest. *See Payton*, 445 U.S. at 603. The agents and officers encountered Defendant El in the hallway as he left his bedroom, and they arrested him there. They then lawfully conducted a protective sweep of the adjoining areas, including the bedroom, to ensure officer safety. *See Buie*, 494 U.S. at 334. In the bedroom, the agents assert, they found documents in plain view that, based on their investigation, showed that Defendant El was engaged in criminal activity, including purported identification cards and a form that he allegedly was using to try to impose his own tax liability on others.

Defendant El does not assert that the items agents initially seized before they obtained a search warrant were not found in plain view in the bedroom. *See Hromada*, 49 F.3d at 690. Although he asserts that the agents were "rummaging" through his property, he does not suggest that they handled any items that were not in plain view or that they intruded on any enclosed spaces, such as a desk drawer, which might be outside the lawful scope of the protective sweep. Nor does he contest that the incriminating character of those items was immediately apparent. *See Horton*, 496 U.S. at 136. Furthermore, nothing in Defendant El's motion suggests that the protective sweep lasted longer than a few moments. Thus, Defendant El's motion to suppress does not suggest that the agents engaged

9

in any conduct that violated the Fourth Amendment by seizing contraband found in plain view during a lawful protective sweep. *See Hromada*, 49 F.3d at 690. Without more, Defendant El's assertions that the agents did not initially have a search warrant when they entered the residence and seized evidence do not show that any evidence must be suppressed.

### C. The agents' alleged failure to return the search warrant with a complete inventory is a ministerial defect that does not invalidate the search.

Federal Rule of Criminal Procedure 41(f)(1)(D) requires that an officer executing a search warrant promptly return the warrant and inventory to the magistrate judge designated on the warrant. The failure to comply with the return and inventory requirement, however, is a "ministerial" defect that "does not affect the validity of the search." *See United States v. Diecidue*, 603 F.2d 535, 562 (5th Cir. 1979)[2] (holding that failure to list an item in the inventory of a search warrant return was a ministerial defect that did not invalidate the search or warrant suppression of the omitted item); *United States v. Wilson*, 451 F.2d 209, 214 (5th Cir. 1971) (holding that the failure to return the search warrant was a ministerial

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

defect that did not invalidate the search).  Thus, the agents' alleged failure to return the search warrant with a proper inventory is a ministerial defect that provides no basis for suppressing evidence in Defendant El's case.

> **D.  The agents were not required to show a copy of the search warrant to Defendant El before searching his home, and the agents were not required to leave a copy of the warrant with Defendant El personally.**

An officer executing a warrant must give a copy of the warrant and a receipt for the property seized to the person from whom the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.  Fed. R. Crim. P. 41(f)(1).  Officers are not required, under the Fourth Amendment or under the Federal Rules of Criminal Procedure, to show a property owner a copy of the warrant before conducting a search.  *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006).

As explained above, the agents and officers who arrested Defendant El did not have a search warrant when they entered the home to arrest him.  Thus, there was no search warrant for the agents to show Defendant El at the time of his arrest.  Moreover, there was no requirement that they show him a copy of the search warrant issued later that day—when he was in jail—before executing the warrant.  *See Grubbs*, 547 U.S. at 98-99.

11

After conducting the search, the agents and officers were required *either* to give Defendant El a copy of the warrant or leave a copy at his home.  *See* Fed. R. Crim. P. 41(f)(1).  Defendant El makes no suggestion that the agents failed to leave a copy of the search warrant and receipt at his residence.[3]  Thus, Defendant El's assertion that he was not shown a copy of the search warrant at the time of the search does not suggest that the agents violated Rule 41(f).

### E. The agents' alleged failure to show Defendant El a copy of the arrest warrant does not invalidate the arrest.

Defendant El's statements in his motion to suppress and responsive pleading indicate that, during his arrest, he asked to see a copy of the warrant.  As the Court reads Defendant El's pleadings, he seems to allege that he repeatedly asked to see a copy of the search warrant.  [*See* Doc. 119 at 1; Doc. 148 at 1-2.]  As discussed above, his assertion that he was not shown a copy of the search warrant is without merit.  Nevertheless, because he also complains that he was not shown a copy of the arrest warrant during the arrest, [Doc. 148 at 2], from an abundance of caution, the Court also considers whether Defendant El might be

---

[3] Furthermore, Defendant El does not dispute the government's assertion that a copy of the warrant and inventory was properly left with his roommate, Shtoola El.  [*See* Doc. 141 at 3; Doc. 148.]

entitled to relief based on his assertion that he was not shown a copy of the arrest warrant.

Federal Rule of Criminal Procedure 4(c)(3) governs the manner in which an officer may arrest a defendant. That Rule provides:

> A warrant is executed by arresting the defendant. Upon arrest, an officer possessing the original or a duplicate original warrant must show it to the defendant. If the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the original or duplicate original warrant to the defendant as soon as possible.

Fed. R. Crim. P. 4(c)(3).

An arresting officer's failure to produce an original or duplicate warrant does not, standing alone, suggest that the officer has violated Rule 4(c)(3). *See United States v. Bembry*, 321 F. App'x 892, 894 (11th Cir. 2009) ("There is no federal requirement that an officer have a warrant in hand or nearby when he is arresting the suspect."). There is no Rule 4(c)(3) violation unless (1) the officer has an original or duplicate warrant and fails to show the warrant to the defendant or (2) the officer fails to inform the defendant of the warrant's existence and of the offense charged and, after the defendant so requests, fails to show the warrant to the defendant as soon as possible. *See* Fed. R. Crim. P. 4(c)(3). The

13

commentary to Rule 4 further explains that "the rule does not attempt to define any particular time limits for showing the warrant to the defendant." Fed. R. Crim. P. 4, cmt. 2002 amends.

Defendant El's bare assertion that he was not shown a copy of the arrest warrant at the time of his arrest does not suggest that a violation of Rule 4 occurred. He does not assert that the agents and officers had a copy of the warrant in hand but did not show it to him, or that they failed to tell him why he was under arrest. Moreover, he does not suggest that he did not view the warrant later. *See* Fed. R. Crim. P. 4, cmt. 2002 amends.

Even if Defendant El could establish that the arresting agents and officers violated Rule 4(c)(3) by not showing him the arrest warrant, he has made no showing that the exclusionary rule would apply in this case. My own research suggests that no court has broadly applied the exclusionary rule in the case of a Rule 4(c)(3) violation. The D.C. Circuit has explained that Rule 4(c)(3) might serve three different purposes, which could support a limited application of the exclusionary rule if the defendant's substantial rights were implicated. *See*

*Bryson v. United States*, 419 F.2d 695, 701 (D.C. Cir. 1969).[4]  First, the Rule might prevent the unexplained detention of a lawfully arrested individual.  *Id.*  Second, by requiring officers to inform an arrestee of the charges against him, the Rule might protect the arrestee's privilege against self-incrimination.  *Id.*  Third, the Rule might insure against the possibility that a defendant could resist a lawful, but unexplained, arrest.  *Id.*

There is no suggestion in the record or pleadings that Defendant El felt that his detention was "unexplained" at the time of his arrest, although he disputes the validity of the charges against him.  There is no indication that Defendant El incriminated himself during the arrest.[5]  It is also undisputed that Defendant El was cooperative during his arrest, as asserted by Defendant El in his responsive pleading [Doc. 148 at 1] and by Special Agent Rich and Shtoola El at the bond hearing [Doc. 79 at 49-51, 63.]  Thus, even if Defendant El could show a

---

[4] The D.C. Circuit declined to consider whether a broad application of the exclusionary rule was appropriate in *Bryson*.  419 F.2d at 701-02.  Here, the Court need not take up that question either, because Defendant El has not asserted sufficient facts that, if proven, would show that a Rule 4(c)(3) violation occurred.

[5] In his motion to suppress, Defendant El asserts, in a conclusory fashion, that he was "compelled to give evidence against himself under threat of violence to his person and in violation of the . . . Fifth Amendment." [Doc. 119 at 2.]  But, as a factual matter, there is no suggestion in the record or in Defendant El's pleadings that he gave any incriminating statements to police or federal agents at the time of his arrest.

technical violation of Rule 4(c)(3), he cannot show why that violation would require the suppression of evidence in his case.

## IV. CONCLUSION

In sum, taking Defendant El's assertions as true, he has presented no basis for suppressing any evidence uncovered during the search of his residence after his arrest. It is therefore **RECOMMENDED** that the motion to suppress be **DENIED**. [Doc. 119.]

This matter was decertified ready for trial as to Defendant El and referred to me solely for consideration of Defendant El's motion to suppress. [*See* Doc. 151.] Having done so, I am aware of no problems relating to the scheduling of this case for trial. It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

IT IS SO RECOMMENDED this 3rd day of January, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge